Please approach the podium. Tell us who you are, how much time you need. Good morning, Your Honor. I'm Scott Howey, H-O-W-I-E. I represent the plaintiff at the Lab, the Pekin Insurance Company. I expect to need no more than 15 minutes. Good morning, Your Honor. Jim Sarantias, Belgrade & O'Donnell. On behalf of the Applee, I represent Pulte Home Corporation. And likewise, I anticipate to need no more than 15 minutes. We have read the briefs. We know the facts. If you want to argue the facts, argue them as to a point of law. Don't just start telling us exactly what happened. And stick to your strong points. First, we will not hesitate to ask you questions about points we think are important. Okay? Thank you. Let's please speak up. Good morning, Your Honors. Again, I am Scott Howey. I represent the plaintiff at the Lab, the Pekin Insurance Company. The issue in this appeal is a simple one. Too simple, in fact, for an appeal. Does the underlying complaint in the related action allege vicarious liability or doesn't it? If it does, Pekin is obligated to defend. If it doesn't, Pekin has no such obligation. Pekin maintains, of course, that the underlying complaint does not allege vicarious liability. And truth be told, Pulte doesn't really take issue with that. Pulte makes, instead, a different argument, that there is a possibility that someday the underlying plaintiff might allege vicarious liability against it and that if that complaint would be covered, then the current complaint is covered as well. Well, under the facts of this case, counsel, couldn't a rational trier fact find that the named insured was solely liable where they're the sewer contractor? I mean, apparently, without knowing for sure, isn't it rational for a fact finder to say, yeah, they're the ones who left the sewer uncovered, and therefore the combat employee deserves money only from the sewer contractor? That's possible, but that would be a finding against the named insured, Cundi Construction. And Pekin is providing Cundi a defense in the underlying case. That is not at issue here. I understand that. But then the additional insured would have paid for their defense when the jury, at the end of the day or the finder of fact, it's always the jury in Cook County, would have found that the sewer guy, Cundi, was responsible. And that's because the allegations against Pulte, the additional insured in this case, are that Pulte was itself negligent for its own act, was liable for its own negligence. And that is what the policy doesn't provide coverage for. In the construction context, under what actual scenario would you have a case where, in this case, the contractor would be liable without having any negligence of its own for the actions of a subcontractor? If it were alleged to be vicariously liable. A situation where if the general contractor was alleged to be factually blameless and utterly without fault for its own actions, and yet still legally liable for the negligence of someone else. Name a theory. So go ahead. That's the theory. I've done this for 14 years. I've never seen a case where there was not some direct negligence alleged under 414 of the restatement in a construction context. If I'm curious, this is not a medical mail case. This is a construction case. Correct. So tell me a complaint that could possibly say that a contractor is only vicariously liable for its actions of a subcontractor, and yet they did nothing wrong. The complaint would need only to say that. In fact, it would not even have to say that the general contractor was factually blameless, as long as it didn't allege that it was at fault, or contain some count that was based solely on its relationship, making it vicariously liable for the named insured's negligence. Well, you've been in this game longer than I have, Mr. Howey. Have you ever seen a complaint where it wasn't alleged that the contractor had done something, for example, retained too much control, failed to supervise, failed to make sure the premises were safe? That's in every single complaint I've ever seen. And it's not the presence of those allegations that takes this case out of coverage. The fact that the underlying plaintiff alleges that the additional insured was at fault does not, is not the thing that keeps this from being a covered case. Those are, you're correct, those are completely common allegations. They happen all the time. And those don't, those are not the ones that are at issue. What's at issue is what's missing. Because this, this complaint alleges only that, that it couldn't be, pardon me, that Pulte Home was negligent for its own, liable for its own negligence. It doesn't contain anything to suggest that Pulte might have been blameless and yet still responsible for someone else's negligence. Now, if the complaint, the complaint very well may allege, without affecting coverage, may allege that Pulte was negligent. But if there are also some allegations in the complaint to the effect that Pulte was faultless and yet legally responsible for Jim Kundy's negligence, then that is the allegation that would be necessary to bring this within the coverage of the Pekin policy. And there's nothing like that in this complaint. And there never has been one in any complaint that I've ever seen. And, I mean, again, I've not only done about 100 of these, but what plaintiff's lawyer or insured would put that in there? I mean, what, I'm sorry, insured party would put that in there? I'm suing him even though he did literally nothing. We'll make it clear, he did nothing. My theory of liability on him is completely vicarious. Why would they ever do that? Because they plead in the alternative. And that happens all the time. It's not at all uncommon, and I respectfully take issue with the notion that this doesn't occur, because there are, it is fairly common to see allegations in addition to allegations that the general contractor was liable for its own negligence. Also negligence, also alternative allegations that even if it wasn't negligent, even if it was faultless, it is still nonetheless legally liable for someone else's negligence. And that's a... But your theory is it's a sole, the word sole says sole. So not just Conte and Pote, but Conte, Pote, the whole world, he would still not have covered. But it's important to recognize where that, where the word solely appears. And it's commonly mistaken or misconstrued as to what the role of that word is in the endorsement. In fact, that happens a number of times in Pulte's brief in this court. But the policies in endorsement makes Pulte an additional insured only with respect to liability incurred solely as a result of some act or omission of Cundi construction and not for Pulte's own independent negligence. Now, that doesn't require that there only be allegations that Pulte was responsible for its own negligence. It requires that there be allegations that Pulte might have been responsible for someone else's negligence. And that's a distinction. It's perhaps a fine distinction. But to be true, for that to be legally true, that under what theory would the contractor be legally liable where they did nothing wrong? The theory would be vicarious. No negligence of any kind. The theory would be vicarious liability. And in fact, Pulte does a fairly good job in this court of making the plaintiff's case in the underlying case because Pulte points to a number of ways in which it might be held vicariously liable. It points to contract provisions. It points to the relationship that it claims to have enjoyed between itself and Cundi construction. It makes the case for vicarious liability in this court, but it makes a case that the underlying plaintiff hasn't made, hasn't tried to make, hasn't alleged, hasn't put in any underlying complaint. And that omission, I think, is a significant one, especially when there is, if Pulte is to be believed, such a good case for vicarious liability. Pulte maintains at length in its briefs that there is a possibility that eventually the underlying plaintiff will allege vicarious liability. And it points to all those things, the contract, the relationship. It points to intimations that the underlying plaintiff's lawyer has even suggested that he intends to try to hold Pulte vicariously liable, but he hasn't put it in the underlying complaint. He hasn't made that allegation at this point. If at some point someday he does, then we might have a very different case for coverage and we might have a very different issue, different issues in play in that case. But he has filed a motion to cite additional authority of Pekin v. Wilson. Do you think it applies in this case? Pekin v. Wilson disposes of one of the arguments we have made and disposes of it against  it does stand for the proposition that pleadings outside the underlying complaint can be considered. For example, the fellow, the ComEd employee said, I do intend, I do mean by my complaint to hold Pulte vicariously liable. Well, Pekin v. Wilson speaks to, still speaks to pleadings. It was a third-party complaint that was at issue in that case. And in this case, Pulte has tried to raise its own third-party complaint, or its own, I'm sorry, its own counterclaim in the underlying case as a basis. And we acknowledge that Pekin v. Wilson says that is now right for consideration. But it doesn't change anything because it doesn't allege vicarious liability either. Vicarious liability is something for the plaintiff in the underlying case to allege. What Pulte tries to allege in that underlying counterclaim is contribution. It's not seeking to hold anybody liable for someone else's negligence, which is what vicarious liability would be. It seeks to transfer its own potential liability to Cundi and thereby, it believes, to incur, to invoke the insurance policy's coverage. But that's not a place where vicarious liability is alleged either. It stands for something and alleges something very different. So Pekin v. Wilson says, as I acknowledge, you have to consider that complaint. But it doesn't say that that complaint resolves the issue. In fact, the grounds on which this case should be decided are the same regardless of what you consider, that neither the underlying complaint filed by the plaintiff nor the underlying contribution counterclaim filed by Pulte allege vicarious liability because none of them suggest that Pulte might be liable for someone else's negligence despite being factually blameless. And that, again, goes back to the language of the endorsement itself. And bear in mind that the endorsement is what makes Pulte an additional insured. It's what says that Pulte is entitled to coverage. And it defines the coverage that it's entitled to. It says, and I'll quote it again, that Pulte is an additional insured only with respect to liability incurred solely as a result of some act or omission of Cundi construction, the named insured, and not for Pulte's own independent negligence. And in this case, all that the underlying complaint alleges is Pulte's independent negligence. If you look to the allegations of the complaint, and that complaint is contained in an appendix to our brief, it specifically says that the defendants were liable. Cundi is a defendant, of course, but Pulte is a defendant as well. And there is no effort in those allegations, no suggestion, that any one of the defendants might be liable for someone else's negligence. In fact, following the list of alleged negligent acts and omissions committed or omitted by the defendants, it's important to look at paragraph 9 of the underlying complaint, which alleges, after listing the various acts or omissions, alleges that as a direct and proximate result of one or more of the aforesaid careless and negligent acts and or omissions of the defendants, the plaintiff was caused to fall, thereby causing severe and permanent injuries. It is the acts of the defendants, in this case, defendant Pulte, that is alleged to be responsible for the underlying plaintiff's injuries. Because the underlying complaint But this is an open sewer put in by your, by the named insured that the combat employee fell down, right? There is no such allegation in the complaint. Oh, he didn't fall down a sewer hole? He did fall down a sewer hole. A sewer hole? That's in the complaint. Is the named insured a sewer contractor, is he not? A subcontractor? That's not in the complaint. That is a fact. That is a true fact. It's not in the complaint. It's a true fact. There are several other defendants as well. But the allegations also are of that the defendants failed to make a reasonable inspection of the premises, improperly operated, managed, maintained, and controlled the aforesaid premises, failed to provide the plaintiff with a safe place within which to work, failed to warn the plaintiff of the dangerous condition, failed to barricade it, allowed men to work around it, and permitted the drained sewer opening the ground to be uncovered or unbarricaded. Certainly the complaint alleges that Kunde did those things. And Kunde is being defended for those things because Kunde's liability, Kunde's negligence is what the policy covers. The complaint also, however, alleges in the same paragraphs, because it refers to the defendants as a whole, also alleges that Kulte did those things. Whether that's true or not is something to be sorted out in the underlying case. But whether it's alleged or not is something this Court should be deciding. And whether it's alleged or not can be decided simply by looking to that underlying complaint. The underlying complaint says that Kulte is liable because Kulte was negligent. Now, it's important also to look to what the purpose and intention of this policy was. The policy, as it sets forth its coverage in the additional insured endorsement, or even before the additional insured endorsement, the policy is issued as named insured to Jim Kunde Construction. And it is provided that it covers, it's acknowledged that it covers Jim Kunde's liability. The additional insured endorsement reflects the party's intention that Jim Kunde's liability be covered even when that liability is transferred to someone else, through some sort of contractual arrangement, perhaps, through vicarious liability, through any means by which some other party might become legally liable for negligence committed by the named insured, Jim Kunde. But there is an important distinction between an allegation that Kulte is responsible for someone else's negligence, which would be vicarious liability, and the allegation that Kulte committed the negligence through someone else, which is the most that this complaint alleges. The suggestion that Kulte makes in this Court that it might be found liable at some point for the negligence of Jim Kunde is at odds with what the complaint alleges. And the only way the purpose of the contract, right, purpose, I hear Kulte hires Kunde as a contract, where Kunde says if we're liable for negligence, you're covered, right? I mean, that's what they demanded in their contract. As every good contractor would, otherwise there's no purpose to having additional insured insurance if it's worthless. That you must, if you do something bad, and through your negligence I get sued, I better be covered. And that's what that contract, to put it in Chicagoese, that's what it says. And that's the purpose behind all of these insurances. That's why we have an additional insured in the construction context, so that the subcontractor will hold harmless the general contractor. And that's what this says. For the subcontractor's own negligence. And that's specifically what the additional insured endorsement speaks to. So the additional insured endorsement refines, if you will, the general understanding of what these policies might, in other circumstances, cover. And this passage of the endorsement has been interpreted that way by this very court. The Pekin v. UPS case is the most similar to this one, in which this court recognized that the addition of the word solely, and the use of that word to define the scope of the coverage being extended to the additional insured, had the effect of doing so. And it enforced that endorsement, just the way we're suggesting it be enforced here. Well, in UPS, and this is in response to the dissent of Justice McBride, so she points to what the dissent says and what she says. However, we find that neither the Aiken complaint nor the third-party complaint suggest that SWAN, which will be the name insured, provided the unstable ladder. Rather, the Aiken complaint alleges that UPS and Warner provided the ladder, and the third-party complaint says that SWAN failed to provide Aiken with proper equipment. In this case, the name insured is named, the sewer contractor is named as a defendant in this case. And there's absolutely allegations. I mean, not in the complaint, but in the real world, the sewer contractor, you would normally, if you fall down a sewer, you'd look for the sewer contractor. And they have. They sure have. In fact, they have done that. Yeah. But they haven't attempted to attribute that negligence to, the negligence of the sewer contractor to the general contractor. They have said the general contractor was liable for its own negligence. But then you get to the point, are we stuck? Are we, the courts of review now, stuck with the bad draftsmanship or good draftsmanship of plaintiffs? I don't think it's a question of good draftsmanship or bad draftsmanship here. It's a case of respecting the draftsmanship that's been done. And especially given the fact that Pulte has made such a good case in this court for why it ought to be alleged to be vicariously liable, all those things seem so obvious, if Pulte is to be believed, that it's remarkable and it's significant that the underlying plaintiff hasn't made those allegations. It's not remarkable at all. We see complaints all the time. They're junk. They're terrible. They're absurd. I don't know who wrote them. They're written in crayon, I think. And they're horrible. But at some point, there has to be some respect for what's been alleged. And we can only judge what's there. You go to Pekin and Wilson. In fact, going back, let's respect the fellow who fell down. And I do respect the fellow who fell down the sewer hole. I do. The poor guy got hurt. But as I just said to the Supreme Court last week or two weeks ago in Pekin, there's no possible reason for Johnson suing in tort for the intentional alleged defendant that Wilson's actions were excused by as a policy state of self-defense. Certainly here, why would the plaintiff say, and believe me, then I know that Pulte did nothing wrong. I'm just betting that we'll get some money from him anyway through precarious liability. Why would they do that? Because they might, first of all, because they would look to a different source of insurance, an additional source. They might recognize that they have a case for vicarious liability against Pulte, even if Pulte itself did nothing wrong. It's a matter of completeness. It's a matter of pleading in the alternative. It's a matter of recognizing that there is that potential for legal liability, even despite the possibility that the general contractor might not have been negligent. A similar circumstance, and another circumstance different from this one, but similar in this respect, I submit, is successor liability in environmental cases. Certainly there are other issues involved in environmental claims, but successor liability under the federal statutes suggests that the owner of a piece of property may be liable for environmental damage found on that property, even despite the fact that the damage may have occurred years or decades before at a time when the owner didn't own the property. That's absolutely true. And that's a circumstance. But this is not a successor liability case. This is a construction contract. No, but they are both situations in which it is possible to allege that a particular defendant is legally liable despite being factually blameless and utterly not at fault. We've gone around that circularly about five times, and I don't think we'll agree. That's fair enough, Your Honor. But I think that if you look to the allegations of the complaint, you do not see any attempt to hold the additional insured liable solely for something that the named insured did. There are allegations that the named insured did things wrong, did things negligently. There are allegations that the additional insured did things wrong and did things negligently. But there is no crossing of those allegations, if you will. There is no suggestion that one party might have been negligent because of something the other parties did, even though it was not in any way at fault itself. The additional insured endorsement reflects the Pekin's promise to cover only the liability of the named insured, its named insurer, Jim Kunde Construction, whether that liability is being alleged against Kunde itself or being alleged against some other party. It follows the liability, if you will, not just incurred by its own insured, but its own insured's liability perhaps attributable or imputable to someone else. That's what the policy is intended to cover, and that's what the additional insured endorsement provides. In a case like this one where the individual parties are alleged to be responsible only for their own individual negligence, provable or not, it's the allegations that control. And Pulte's suggestion that the coverage determination ought to be made by reference to something that could be alleged sometime in the future is at odds with decades of Illinois coverage law, which points us to the underlying complaint, the actual, physical, black and white piece of paper that's filed with court and is attached as an exhibit to our original complaint and found in the appendix to our initial appellate brief. That's the complaint that we look to. Is it possible? Is it potential that there will be some day another complaint that might trigger Pekin's duty to defend? Of course it is. But that is not the potential to which the cases speak. The potential is not the universal theoretical potential that anything is possible. Every Cub fan knows it's possible the Cubs might be in the World Series this year. But the potential has to be measured by something more concrete, something more limited. And the thing that it's measured by, every case on this subject reflects this, is the underlying complaint. The underlying complaint in this case, Pulte practically acknowledges, does not support the duty to defend. It does not contain the necessary allegations. And that's why Pulte is so intent on directing this court to what might someday be alleged. It might be alleged. It might not be alleged. We don't know that. At this point in time, we have a concrete, bright line to look at. And that's the underlying complaint that's on file. It's the first amended complaint in the underlying case. It's found in the appendix to our brief. And it doesn't contain any allegation that Pulte is liable for Cundi's negligence. That's what's necessary to trigger the duty to defend in this case. Pulte faces the potential liability of a negligent party, not the vicarious liability of a party who must make amends for someone else's negligence. Foreshadowing of possible complaints that might someday be filed is not enough to trigger a duty to defend. And what's necessary in this case is something that isn't found in this case, an allegation that Pulte was liable for Jim Cundi's negligence and liable solely for Jim Cundi's negligence. It isn't a question of whether there are also allegations that Pulte was liable for its own negligence. Those don't stand in the way of coverage. If there is some other corresponding allegation that Pulte was liable for negligence of someone else, it's an alternative pleading that's not uncommon in the construction context and is necessary in this case to trigger the duty to defend as reflected in Pekin's policy and its additional insured endorsement. The underlying complaint does not suggest the possibility that Pulte is vicariously liable for Cundi Construction's negligence. And for that reason, the Circuit Court was incorrect to decide this case in favor of Pulte. I'd be happy to address any other questions or concerns the Court might have. But in the absence of any, I simply ask the Court to reverse the lower court's decision. Thank you. Thank you. Good morning, Your Honors. Again, Jim Sarantias on behalf of Pulte Home Corporation. Your Honors, to start off with, the threshold for raising the duty to defend is much lower than the duty to indemnify. To show a duty to defend, all you have to show is that there are some allegations or some basis in fact to create coverage under the policy. To immediately address a remark Your Honor, Judge Quinn brought up, there is some day that a trier of fact could find that Pulte is vicariously liable in this case because of the negligent acts of Jim Cundi Construction. Pekin has conceded in its reply brief at page 2 and recognizes that there are allegations which suggest that there is a vicarious liability in this case. As record shows at page 104, paragraph 1, and 105 of paragraph 3, the plaintiff has alleged that the defendants owned, controlled, and or were in charge of construction of the home. And then in paragraph 3, indicates designated various work methods through their agent services and employees. Under section 414, which is the restatement section that actually raises this issue of vicarious liability, in those comments, they actually do indicate that, for example, under comment A, that one way to be vicariously liable is to actually control the operative details of the work or in the general parlance of construction defense cases, the means and methods of the work. Under comment C, it talks about the general contractor retaining a right of supervision such that a contractor is not entirely free to do the work in his own way. What Pekin wants is a pleading that says solely, solely for, you're only being held, we're looking for liability against you solely under vicarious liability. But as the Illinois Supreme Court recognized in the Wilson v. Pekin case at footnote 2 and in its previous decisions, and there they're citing the Bedoya case that they decided, if there's just one claim, one claim that raises the duty to defend, other claims which do not fall under the coverage also must be defended. And that's where they're actually wrong in this case. Now, they talk about a factually blameless defendant such as Polte, but even under vicarious liability, they're not factually blameless because one of the things we have to show to be a plaintiff is control, at least, control over the means and methods of the work. A plaintiff would not agree that somehow an entity that fit that would be blameless. They also make this argument that somehow we're making the case for the plaintiff in the underlying case, and that's not exactly correct. What we're trying to show the court, as well as Pekin, that plaintiffs may be able to make this case, which is why you can't take the narrow view that Pekin's taken, which is you only look at this underlying complaint. And consistent with Wilson v. Pekin, the court can look outside of that underlying complaint. And also, by the way, Your Honors, it would be consistent with this Court's decisions in both the Envirodyne case, as well as the Holabird and Root case, which are cited favorably by the Illinois Supreme Court. Now, they say our counterclaim for contribution against a defendant, not a third party, but a defendant being sued by the plaintiff somehow is us just trying to shift our fault onto them. Well, certainly that could be part of the reason. But more importantly, and why Wilson is so important here, is that the pleadings that we're bringing in in our counterclaim, which include our contract with their insured, which include their answer to our counterclaim, suggest additional facts that would suggest that there is potential coverage under their contract. For example, one of the things that Section 414 contemplates in the case law that interprets Section 414 is it does consider the relationship of the parties, and in particular, the contract. In our pleadings, and specifically on the record at 351 paragraph 2, we contracted with Jim Gundy Construction to do sewer and water work. And in part, that work was supposed to be under the direction of a Pulte superintendent. That doesn't mean that instantly there's vicarious liability. It simply says that there's a possibility that there could be under our contract. And under Wilson, it says that that's something that the courts can consider. In addition to that, we also have their insurance answer to our counterclaim, which actually they admit to the contract. They admit to their liabilities and duties on the contract. They admit to being in the sewer, water, and business. And they admit to the work at the time and place alleged in the contract. Now, ultimately, and what Wilson cautions, Wilson says, and this is all covered on pages 10 through 15 of that slip opinion, Wilson says that you can look at things outside of that pleading so long as there's not a decision as to the ultimate issue in the case. And the ultimate issue under vicarious liability would be control of the subcontractor, whether it be the means and methods or whether it is that the supervision was such that they weren't able to do the work freely and in their own way. But under 414, that requires for Pulte to be held liable under 414. The plaintiff would have to show that Pulte exercised some kind of control, supervised things. It's direct negligence, I'd suggest. Is that correct? Not exactly, Your Honor. If I may explain. Sure, yes, Your Honor. That's why I love oral arguments. 414 you suggested, you started by saying it can be construed as vicarious liability. I suggest that's not true at all because, and again, this helps you, if there's vicarious liability, if there's a possibility that Pulte can be found vicarious liability, meaning through no fault of its own, it could be liable, well, then this insurance actually counts for something. This Pekin's policy then indeed does provide insurance for that particular fact. I suggest, however, in the construction context where Pulte is the contractor or the general contractor and Cundy is the subcontractor, Cundy is still an independent contractor and, therefore, by definition, I don't believe you could ever be found vicariously liable for the actions of an independent contractor. Rather, liability can only be found through 414. And 414 is not vicarious liability. It requires affirmative negligence, failure on the part of the general contractor, the owner of the property, to do something or generally fail to do something, which is to supervise, that the obligation is supervised and they fail to do so. That is not your normal vicarious liability case where the owner of a bus company, the driver drives off a cliff and kills everybody. If you hire this guy, don't get charged. If they assume they don't charge you with the bus company with negligent hiring, they're liable for the actions of their employees. That's what vicarious liability is. I'm liable for my employees. I don't see how vicarious liability applies in the context of construction, and therefore I don't think this insurance covers anything. Which, again, since they provide no insurance, no coverage for anything that could occur, it's illusory and you'll prevail anyway. So they can't read it out. If they read this out, if they say they're only liable for vicarious liability, which does not exist in the construction context between contractors and subcontractors, as opposed to your employees, your own direct employees, then it is absolutely illusory. And we would agree with you, Your Honor. Thank you. The thing that Your Honor is pointing out, and it's an argument made in our briefs, and a point that we can briefly make, and one of the things that's troubling about the way Pekin is trying to apply its own additional insured provision and how they're trying to say, oh, the pleading needs to be so exacting, even though the law requires something less, is it would violate three things, at least one of those things the Court brought to Pekin's attention, policies of insurance interpretation. One of those things, besides, you know, if there's any facts or any possibility of coverage would be the drafting of the complaint. We can't sit there and be subject to how they draft the complaint. If the complaint allows some facts to be shown which could show the vicarious liability, then, in fact, what they're suggesting would counter against that. I mean, it would have to be exact. The third thing, policy, it would, of this Court and the Illinois courts, that it would offend would be the duty to defend covers any claim under the pleadings that might potentially fall within the scope of coverage. Ultimately, what Pekin's trying to do here is take cases decided by this Court, which the Court has interpreted because of allegations such as defendants and each of them suggests that it's asking for direct liability. It's asking this Court to read that into this case, as opposed to looking at a decision such as Hallmark Holmes, which is sort of the contrary and the complete opposite of this case, where there is an actual count that alleges the vicarious liability. But even in that case, Pekin said that that was still not enough. This case is sort of closer to the Hallmark Holmes case in the sense that we do have some allegations that would suggest that Pulte could be vicarious liable. As long as we have some allegations, that should be enough. The rest of it is left for what Your Honor, Judge Quinn had mentioned earlier. It's left for the trier of facts somewhere later on down the road, or maybe short of that. Maybe after some discovery, it turns out that either Pulte wasn't involved, Cundy wasn't involved, or maybe one of the other subcontractors were at fault. But again, this is way too early for that. Pekin almost seems like they're jumping ahead of the duty to defend and trying to get to the duty to indemnify and almost suggest that an adjudication of the merits today would suggest the following. And that's simply just not the case. And ultimately, Your Honors, it just fairly can't be said that the negligence that's been exclusively alleged against Pulte to the exclusion of an argument being made that Pulte's liability is vicarious or imputed. And even in further support of that is we have the request to admit of the plaintiff in the underlying case where the plaintiff admits that they would be seeking vicarious liability under Section 414 or any other theory allowed under Section 414. Now, while that doesn't have to hold the day, it is certainly one more thing that supports the argument that Pulte is making and certainly cuts against what Pekin is saying here today. Your Honors, unless Your Honors have any questions, Your Honors, thank you. And we would simply ask that you affirm the trial court's decision granting summary judgment in our favor. Thank you. Thank you. May it please the Court. Respectfully, I take issue with counsel's suggestion that is Pekin jumping the gun or jumping ahead to the duty to indemnify. We are not at all concerned with what might be proved at trial. We're concerned at this point with what could be proved based on what's alleged and what's alleged in the complaint. It does not support a finding. It doesn't support a jury instruction, for example, that Pulte is liable only for the negligence of its named pardon me, doesn't suggest any potential jury instruction that Pulte could be held responsible for the liability that could be incurred through its own negligence. We are not jumping ahead. We are looking to the present. We are looking to the complaint that's on file rather than doing what Pulte would suggest and jumping ahead to other complaints not yet filed that might never be filed. That is improper. We acknowledge that, and we argue that, and we rely upon this Court's recognition of the fact that we are concerned with the complaint currently on file. I'd also take issue with Pulte's counsel's suggestion that Pekin is seeking a specified language, certain language in an underlying complaint that would say, quote, unquote, solely vicarious liability. That is not what Pekin requires, and Pekin is not as exacting as Pulte suggests it is. What Pekin requests and what Pekin requires by the language in traditional insured endorsement is a complaint that allows for the possibility within its allegations of a conclusion that Pulte was liable solely for the negligence of the named insured. It doesn't require only that allegation, and it certainly doesn't require an express allegation to that effect, but it requires some combination of allegations that can be assembled in such a way to allow for the possibility that Pulte might be blameless and yet still liable. That is the sort of liability that Section 414 of the Restatement contemplates. It suggests the possibility that because of the relationship and because of the supervisory control that some general contractors can be proved to allege over their subcontractors, that in some of those situations there may be legal fault despite there being no factual or evidentiary fault. That's not an uncommon allegation in construction industry complaints. It's not an uncommon allegation in other areas that might also be covered or might otherwise be covered by this insurance policy. So there must be some suggestion, and again, it's important to recognize the precise place in the additional insured endorsement where the concept of being liable solely as a result occurs. The policy language, and I'll quote it again because it's crucial to understand this precisely, Pulte is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured. And that doesn't require that there only be allegations of that. I can't stress that enough. There may very well be allegations in a covered complaint that Pulte was liable for its own negligence. What's critical is that there also be allegations that Pulte is liable for someone else's negligence. And that's not what's contained in this underlying complaint. This underlying complaint says that the defendants were liable because the defendants were negligent. It says the plaintiff was injured because the defendants were negligent. It says the defendant or the plaintiff was injured because of the defendant's negligence. And it makes no effort to separate out those defendants or suggest that any defendant is legally liable for someone else's factual negligence. That's the sort of thing that the policy covers. I submit again that it's analogous in some ways to successor liability where a defendant may have done absolutely nothing wrong and yet may still be legally liable for some harm or some injury. But that is a different situation from what's alleged here. This is a run-of-the-mill complaint alleging that defendants were negligent. Pulte's a defendant. The allegation is that Pulte was negligent. And the allegation is that the injury resulted from that negligence. Pulte does, as I've said, an excellent job in this court of showing the many ways in which the underlying plaintiff might allege it to be vicariously liable. It points to a number of factors. But the underlying plaintiff doesn't point to any of those factors. And unless he does, and until he does, there is no covered complaint and there is no allegation that Pulte is liable for someone else's negligence. Certainly not that it's liable for the negligence of Cundi Construction, which is what's necessary for coverage of the Pekin policy and the additional insured endorsement at issue here. Again, I would welcome any questions or concerns the Court might wish to voice. But in the absence of any, I would again ask the Court, respectfully, to reverse the decision of the Circuit Court. Thank you very much, Mr. Howell. We will take the case under advisement.